Thanks to both counsel. Next case up this morning is United States v. Underwood, Appeal No. 23-1303. Mr. Hillis, whenever you're ready. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Henry Underwood, and he raises two points for the court's consideration today. First is a challenge to the FREDA colloquy, which we believe was defective in many regards. And then the second concern that we have is the district court's decision to hold my client in contempt of court, which resulted in a six-month conditional, excuse me, consecutive prison sentence. I believe there's error in that as well. I'll begin with the FREDA issue. And in the FREDA issue, we begin with the district court, excuse me, magistrate judge, who was very quick to allow my client the vice of representing himself. These things never go well for the clients. We wish that courts would not bend over backwards to allow people their Sixth Amendment rights when they also have the ability to deny the request under the appropriate circumstances and say you can't represent yourself. I think you have to talk to the Supreme Court about that, given the case law from what they have said. Your Honor, I would say that the Supreme Court has set out what the parameters are, but it's up to the district courts to make the inquiries and findings. And here we have a magistrate judge who initially was ready to get right off the bench and say you can represent yourself, and was only at the behest of the government to say please make findings, that we even have the findings that we have here. And those are defective in many regards. But the findings are not supposed to tell us whether the person's going to do a great job. Because as you said, you could almost write those findings in advance. The answer is no, they're not going to. The finding is, are you mentally capable of saying  I don't want a lawyer. And it wasn't the longest. But as you say, the government did remind the magistrate judge that he needed to go through this. He says several times, I think you're making a mistake. This person is a terrific lawyer, whatever. I don't see where this record is so one-sided that we have to say that the ultimate conclusion was wrong. Well, the prior case in the day talked about the conclusory statements of a judge. And so we're supposed to be making determinations based on what the information is presented from the defendant in response to the judge's questions. The answers here were tailored to the questions asked. They didn't go into the complexities of the case, like Erskine says from the Ninth Circuit that you should do to inform a person about, do you know how to make an opening statement, do you know how to make a closing statement across examined witnesses, et cetera. We've never said, though, that you have to go into that kind of detail. And one of the points you've argued from the Ninth Circuit case is that the court didn't advise him of possible defenses. Well, that's certainly not a court's role to give legal advice like that. That was from Van Moltie, which is the Supreme Court case. So we recognize that it was in the concurrence, I believe. But in any event, it is a subject that courts have now historically incorporated. And it's part of making sure that somebody is making a knowing and voluntary decision. So I think that it should be included. And if this court has not, up until now, adopted what the scrutiny is, say that the Ninth Circuit uses from Erskine, or that the concurrence says in Van Moltie to say, please advise. And I think the Tenth Circuit has also adopted that as a practice, that you should inform somebody of a defense. How could you possibly inform a defendant of defenses as a district court judge when you have no idea what those potential defenses might be? And certainly, at the time, you're doing a Faretta inquiry. Not hard here. We have a five-letter word. It begins with a B and ends in an N. We say Bruin. So we would have defense attorneys who would be ineffective. So you're saying you advise them of some of the defenses and not all of them? And then that's going to cause another issue. Well, the district court only told me I had this defense and not another defense. Pertinent ones, Judge. But again, how is a district court in the position to advise a defendant of potential defenses in a criminal trial when the district court hasn't dug into the discovery? The district court doesn't know what the witnesses are going to say at that point. You're putting a burden on the district courts that seems something beyond what they should be required to do at that point. Judge, I would say that it's not much of a burden to say, you may have available defenses. They could include duress. They could include a Bruin Second Amendment-type defense. Those are things that are easily mentioned. Take a couple of seconds. I don't know how long it just took me, but district court could easily include those things. It's not very burdensome. It would be practical. Why isn't that giving legal advice? It's not. Have you considered or be aware that you can raise these things? It's no more legal advice, I'd say, than are you aware of the federal rules of civil criminal procedure? And you'll need to follow those. And you will have to follow the court's rules about issuing subpoenas and things. I don't think it requires much legal advice. We're just touching on areas that should be relevant for knowing involuntary determination for the waiver of an award. Counsel, the issue, though, is another issue is that the more the district court piles on, the more the district court is susceptible to an appeal saying that the district court discouraged me from exercising my right to counsel or exercising my right to proceed pro se. And you're saying that that's perhaps the district court's role, and that might be your view. I'm not really sure what the Supreme Court would say on that. But I think that, as we've recognized, the district courts, they have to walk a very thin line. And so the more you kind of raise saying, oh, have you thought about this, and have you thought about this? And at some point, it's too much. And so then where does the touching on issues become too much? Well, I can say here it's too little. So we don't have a circumstance where, under a record of this type, I think anybody would come up and complain that the district court, and we are sometimes looking at this from the tail end, right? I would not complain looking at this case if my client had a lawyer throughout Judge Lee. So I'm not asking that too much be done. I'm asking that enough be done. And here, when the judge did not cover, and I'm just going to rattle through these quickly so I can move to the next issue, age, the charges, the education, the penalty, education of my client, the penalties that my client faced, the context. He did not ever ask my client why he wanted a new lawyer. He said he assumed that he knows the reasons why. That was not covered. Then defenses, knowledge of the rules. It was done cursory, right? Rules of criminal procedure. My client's experience was not especially touched upon. The complexities of the case. And I'll conclude with this. The government's use, and it's supported by case law, to have a backward-looking view of, and then the person went after the phrenicology and did these following things. And that must inform that they had knowledge, and this was voluntary because look how well they did or what they did after the phrenicology was over. To me, that is badly flawed. It's illogical that cases would ever do this, to look to say whether a person made a knowing and voluntary decision based on the information that was present in front of the judge at the moment the inquiry is done, and now we'll look with the benefit of hindsight and take in all the things a person did well and say that that girds our decision to find there was a knowing and voluntary decision that happened months earlier, days earlier, weeks earlier. That doesn't make any sense. Doesn't our case law permit that? I'm saying it doesn't make any sense. So you're asking us to overrule those cases? I would ask the court to consider the wisdom of that. It's a delicate way to put it, Mr. Hillis. Judge, I'm not often called delicate. As for the second issue, the district court wrongly held Mr. Underwood in contempt when he refused, under cross-examination, to identify the person who was with him when he confronted his adversary. This, we think we have stronger grounds than our FREDA issue. But he kept saying that the only reason he was invoking his Fifth Amendment rights was because he didn't want to incriminate another person. He never says, can I talk to my standby counsel, even though he had been doing so throughout the trial. And the district judge isn't wrong to say that worrying about somebody else's incrimination isn't part of your Fifth Amendment right. You can think of, you know, you're a good lawyer, you can think of all sorts of things, maybe with the other pending charges or what have you, but it's hard for me to blame the district judge for taking him at his word. A couple of quick answers to that. First of all, under Hoffman, he shouldn't have had to explain because he's now having to explain things at his peril to say, I'm going to tell this information, here's what it is, and then the district court can make the decision to understand what the strategy is. And it may alert the government about things that are going to be useful for the government to prosecute him under the 1958 8A charge. Also, Ye versus City of Escondido, we would have, of course, you may have heard me say this before, I'll say it again, you can waive a claim. You do not waive an argument under Ye versus City of Escondido. So my client said enough when he said, I have a Fifth Amendment right. The judge should have been aware, and the case law says under Molloy from the Supreme Court, the judge is not divorced from the proceedings. This judge is presiding over the 1958 A and the 922 G1. She should know, this is a hazardous course that I'm steering now. He's already said Fifth Amendment, that should be enough. Now I'm making him make an inquiry, an explanation rather, and that violates Hoffman, in our opinion. And then when he does lay out what his reasons are, he does not do a good job. But I don't see ever where she said, take a minute and consult your lawyer. That takes us into Morton, into Brummett, in the cases from the Third, the Fifth Circuit, wherever else you'd like to look, to say that as a matter of Fifth Amendment protections and Sixth Amendment protections, due process and your right to counsel, the judge should be tapping the brakes. District courts are fearsome vehicles when they want to be. And there was not a lot of consideration shown from my client here. The brakes should have been tapped. There should have been a moment where somebody pressed pause and said explicitly on the record, maybe take a minute and consult your lawyer to get a chance like you have in other cases to purge the taint, things like this. This wasn't done. This should have been done. Thank you, Mr. Hillis. Mr. Howler? Good morning, Your Honors. And may it please the court, David Howler on behalf of the United States. Underwood knowingly and intelligently waived his right to counsel, and the district court did not err in holding him in contempt. And this court should therefore affirm. I believe Mr. Hillis has talked a lot about best practices, perhaps, but I don't believe he's demonstrated any reversible error on this record by the district court. Mr. Howler, as you, I'm sure, are aware, the bench book that's given to judges has a detailed list of questions to ask in a Pareto inquiry. And that was not followed here. It wasn't. And this court said in Hill it doesn't have to be. Again, I guess just to echo what I just said, we can talk a lot about best practices, and I certainly think it's always advisable, and we wouldn't even be here if Judge Cherry had read the bench book. But this court has said over and over again that you don't have to read the bench book, and the court isn't going to reverse on that basis. Instead, it's going to look at the four factors. And I really think the first factor, this inquiry, was complete enough. The point of Ferretta, Ferretta says the purpose of the Ferretta inquiry is does he understand the disadvantages of going pro se? And that was fully covered here. All of the things that need to be covered were covered. You are going to be on your own. You might have issues come up, as we see through all the contempt proceedings later on, that you're not going to be able to deal with. You are going to have to figure out how to do all these things on your own. You may have defenses that you aren't aware of. But this court has never suggested that the purpose of a Ferretta inquiry is to sort of give the defendant a roadmap of like, hey, you might have a Bruin argument. You might want to move to dismiss the indictment. You might want to raise 404B issues. I mean, none of that's the role of the lawyer, which they're waiving. And maybe if they go to their standby counsel, their standby counsel can help them with that. But that's not the role of the magistrate. It's never been the role of the magistrate. What about the failure to explicitly inform the defendant of the maximum potential penalties? So this court has said, I believe in Johnson and Todd, that you can look back and see that the penalties were accurately stated at prior proceedings. So he was accurately informed in the initial proceedings. There was a document filed. The district court required a notice of penalties to be filed. Mr. Underwood, as the counsel of record, had access to the entire docket if he wanted it. He could have reviewed those penalties at any time. And unlike the few cases that my opponent has cited where that issue has been raised, that was raised in the context where the defendant, there was some indication in the record that the defendant didn't understand what the statutory penalties were. Here, there's nothing suggesting any of that. And I want to be clear, the racketeering murder charge has nothing to do with this felon in possession charge. The racketeering murder charge, if you look at the indictment in that case, involves incidents that occurred between May and, I believe, July of 2018. And going back and looking at the docket, though, this Feretta inquiry was for both cases, correct? It was done for both cases, yes. He did move to withdraw. His lawyer was the same lawyer in both cases. And he did move to withdraw in both cases. And this was done as a consolidated proceeding. So that's why those were raised in the first place. Right. My only point is, there's no indication he misunderstood the charges. Even though the penalties weren't explicitly stated, there's no indication that he didn't understand what they were. I mean, the reference to penalties is coming in from Von Moltke, which was an instance where the defendant was pleading guilty and didn't have a lawyer present pre all of these right to counsel cases. And so there was an important focus on that in the guilty plea context. But in general, the purpose of trying to have the defendant understand the penalties is just to understand the gravity of all this. The defendant is also, at the same time he's doing this, withdrawing, going pro se on a racketeering and murder charges that are very serious. There's no indication here that Mr. Underwood didn't understand the seriousness of what was going on. He had prior convictions. He had participated in a prior state court murder trial, apparently with counsel, where his counsel secured an acquittal. He knew what was going on here. He went into this with his eyes wide open. And this occurred many months before his trial. He knew what was going on. But when asked, do you understand the federal rules of criminal procedure, rules of evidence, and he just says, yes. This is a guy with a ninth grade education, right? The judge doesn't probe that question at all. He just takes a yes, as though this guy actually does know those rules. I mean, he managed to get subpoenas served. He managed to get witnesses present in court. So I think we normally take the defendants at their word when they're going to be a lawyer, just like we normally take lawyers at their word. And I think that's the way the court has traditionally handled this. I'm not sure that they're, I know that the bench book inquiry is much more probing than what's here. But I don't know that it's going into extreme levels of detail of asking them to, well, explain to me how this rule operates, or explain to me how you understand. I don't think it's going into that level of detail. And I also think, again, even if the court thought on the first factor, OK, formal inquiry, we're a little shaky here. Well, let's look at everything else. Is there anything in his background, his background and experience, what do we look to? Well, we say, we've said seventh grade education's enough. This guy has like a 10th grade education. We've said any sort of prior criminal history helps. Well, he has plenty of criminal history. There's no indication that he's a sovereign citizen. There's no indication that he has any mental issues. Not at that point. I mean, I guess later he files some pretty strange motions. He files a lot of motions in this case. Some of them are strange. Many of them are not. This is not a sovereign citizen case, by any means. And then my only other, I did want to just point out that these two cases are totally unrelated, because that sort of dovetails into the contempt issue. There's no, to the extent that it even matters, there's no way that anything he says here is going to have any impact on his other case, because they aren't related in any way, shape, or form. Mr. Holder, with regard to the contempt proceeding, it is a little bit concerning that the judge didn't take the time to inform Mr. Underwood of perhaps it would be advisable for him to seek counsel or have counsel with regard to the criminal contempt proceeding, because it could increase his eventual sentence. If this were a pro se proceeding in a civil context, we would certainly require, I think, the judge, or it would be, for me, it would be very troubling for a judge not to inform the pro se person in a criminal contempt proceeding that they have a Fifth Amendment right and that they have right to counsel and all of these constitutional rights. Why doesn't the same apply here? So this is a summary proceeding. It's under Rule 42B. But it's a summary criminal proceeding that could result in a longer criminal sentence, right? It can result in a longer criminal sentence. And I guess de facto here, it did result in a longer criminal sentence. But the point is that Wilson, Pounders, all these Supreme Court cases essentially say this is part of the court's inherent powers and that there is no due process right. There's no Sixth Amendment right to counsel in these proceedings. So any witness in the proceeding, it wouldn't have to be a pro se defendant, but any witness in the proceeding would not, there's no requirement that counsel be appointed for even if there was a, even if a witness had called, if Seneca James had gotten on the stand and testified and then said, no, I'm going to not answer any more questions because I don't want to be a snitch. If the court had ordered that witness to answer and he had refused, the court could proceed summarily and say, I'm holding you in criminal contempt. And I think you could do that even in a civil case. So what are best, what courts have said, and I think in Brumit in some of these cases, the courts say, oh, we think it's best practices. We think it's a good idea that you did that. What another district court judge might have done. There is no due process requirement. The other thing that I would point out here, I guess this dovetails back to the first issue, is he is a witness, but he's his own lawyer. He's waived his rights to counsel in this case. So if there was a criminal defendant who had counsel there and the court didn't let him consult with his counsel, that's one thing. But I think really he has told the court, I'm going to be proceeding as a lawyer here. And we know in Pounders versus Watson that that attorney was not told, hey, I should be allowed to have my own counsel when you're going to sanction me as a lawyer. And I don't see any reason why that should be and in terms of the Fifth Amendment issue, for all kinds of reasons, his arguments are invalid on this. And I mean, first and foremost, if the district court was wrong, the district court was just plain old wrong, and he did have a Fifth Amendment right, the way that should have been dealt with is he should have answered the question and he should have appealed and said, now there's error infecting my conviction. That's how this is always handled, right? If the district court is wrong, you don't just say, no, I'm not going to follow your order. You take the district court up on appeal and court of appeals tells the district court judge that the district court judge was wrong. You don't get to decide that. Beyond that, I think the Supreme Court cases, Brown and Rogers, fully show that once he's made all of these statements, he has to testify as to the details. There was a good discussion of this in the United States versus Mitchell as well, and more recently. So there was no error here, and so the contempt was proper and the phoretic colloquy was sufficient. And even if it wasn't, he did demonstrate enough to go pro se. The judgment should be affirmed. Thank you, Mr. Holler. Mr. Hillis? I can give you a minute. Thank you. So when my client invoked his fifth amendment right against self-incrimination, it made it now for the government to meet its burden to show how the information could not possibly tend to incriminate him. The government's lawyer never did that. What the government's lawyer responded was said relevance. But isn't that the inquiry? Isn't the inquiry whether or not an answer to it was relevant to the charges he was facing? No, I think that is not. I think that's the problem the prosecutor made for the government here. But you've waived it. You've waived your fifth amendment privilege when you take the stand and testify. And if there's an answer or question on cross-examination that is directly responsive to what you've testified to and relevant to the proceedings, you've waived it. A couple of things. How is it relevant in the 922G prosecution to know who was with you when you possessed a gun? That information where the government said earlier it wouldn't be used in another case? Another case is a case involving co-conspirators in 1958A. It is directly helpful to the government to know who else was with you committing these crimes. What's directly relevant when you say, this is a 922 gun charge. I was at the same place, but the gun wasn't mine. I didn't touch it. I didn't shoot it. Somebody else did, but I'm not going to tell you who that is. That's directly relevant to say who that person is. I don't think it's relevant to the ultimate issues in the case about did you possess it. It's rather who was with you. That's not the same inquiry. And furthermore, it's on cross-examination by the government that's asking to witness this. Exactly. The witness is not there with a bullseye. He still has Fifth Amendment rights that he can invoke. He properly invoked them here. We think that the government shouldn't have been allowed and didn't, when it tried to conduct the questioning, shouldn't have been allowed to because it was obvious that my client's answers had the possibility to incriminate himself. OK. Thank you, Mr. Ellis. Thank you. Case will be taken under advisement.